UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY SCOTT,

        Plaintiff,

v.                         Case No. 8:14-cv-1620-T-33TGW

PATRICK R. DONAHOE, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE,

        Defendant.

_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendant Patrick R. Donahoe, Postmaster General, United States Postal Service's Motion for Summary Judgment (Doc. # 63), filed on August 1, 2018. Plaintiff Terry Lee Scott filed her "Response to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment on Liability" (Doc. # 67) on September 21, 2018.[1] The Postal Service filed a Reply on September 26, 2018. (Doc. # 69). For the reasons that follow, the Court denies the Postal Service's Motion for Summary Judgment.

_____

[1] The Court accepts Scott's response to the Motion for Summary Judgment as timely filed, but strikes Scott's submission to the extent it purports to be an independent Motion for Summary Judgment. The deadline for filing dispositive motions passed on August 2, 2018.

## I.  **Background**

### A.  **Scott's Military Service-Connected Disability**

Despite being diagnosed with pes planus, commonly known as "flat feet," Scott joined the United States Army after graduating from high school. (Doc. # 63-5 at 1);(Scott Depo. Doc. # 63-1 at 8).[2]  She served as a civilian emergency medical technician.  (Scott Depo. Doc. # 63-1 at 8).  Scott was injured while on active duty when a jeep flipped over and pinned her down, causing damage to her legs. (Id. at 19). She also indicates that exposure to "radiation fallout" in Chernobyl resulted in damage to her reproductive organs. (Id. at 22).

She served in the armed forces for fifteen years and retired in 1994, with an honorable discharge. (Id. at 10). After completing her miliary service, she was found to be a 40% disabled veteran by the Veterans Administration (VA). (Id. at 17-18);(Doc. # 63-5 at 1).  Specifically, the VA found Scott to be 30% disabled because of her flat feet and 10% disabled based on her skin condition known as dermatitis.

---

[2] At some point in the proceedings, Terry Scott became Terry Green.  Even though Terry Scott is now Terry Green, the Court will refer to her as "Scott" for ease of reference and because most of the relevant documentation refers to her as "Scott."

(Doc. # 63-5 at 1).

### B. Scott Becomes a Postal Employee

Scott applied to the Postal Service in 1996, for a position known as "distribution clerk." (Scott Depo. Doc. # 63-1 at 13). Scott was classified as a disabled military veteran, but she testified that, at the time of her application, she did not consider herself disabled. (Id. at 21). Scott disclosed problems with her lower extremities--specifically, flat feet and dermatitis--on her Postal Service application. (Id. at 21-22). A physician evaluated Scott's pre-employment fitness for duty. (Doc. # 63-2 at 5). Scott indicated that she did not have any limitations associated with standing for long periods of time. The physician found that Scott did not have any specific restrictions, but nevertheless recommended that Scott be examined by a specialist to ensure that she could perform the functional requirements of a distribution clerk.

After examining Scott, a board certified physician, Colin S. Beach, M.D., found:

> [Scott] has pes planus. However, I do not feel that there is anything on the physical exam in the functional requirements that were highlighted, including heaving lifting up to 70lb, reaching above her shoulders, use of her hands, standing 12 hours, climbing on her legs, ability for rapid mental and muscle coordination simultaneously,

> working closely with others, working around
> machinery with moving parts, dust, and protracted
> or irregular hours of work, that she should not be
> able to handle. In my opinion, the patient is
> cleared for employment without restrictions.

(Doc. # 63-2 at 13).

Scott began her employment at a post office in Tampa, Florida, on October 26, 1996. (Scott Depo. Doc. # 63-1 at 30). She worked in the department known as 030-Manual Distribution.

### C. **Manual vs. Automation**

Scott described two possibilities for distribution clerks --Manual vs. Automation. To most, manual work is considered more strenuous than automated work. However, according to Scott and others, "Manual" involved much less physical activity and employees in Manual were able to either sit in a chair or use a "rest bar" to make their duties more comfortable. (Id. at 34, 180).

Geraldine Scott, an individual who is not related to Terry Scott, is an EEO Representative and a 30-year Postal Service employee. (G. Scott Decl. Doc. # 68-1 at ¶ 3). She explains that "'030-Manual Distribution' is customarily used for employees who have physical restrictions, whether temporary or permanent, because of its less demanding physical requirements." (Id.). In contrast, "Automation" "was used to punish or silence those who complained or those who filed EEO

4

charges." (Id. at ¶ 2).

Another postal employee, Christina Hartman, worked with Terry Scott and similarly states that "030-Manual Distribution is one of the places injured employees with physical restrictions work, even if assigned to other sections." (Hartman Decl. Doc. # 67-5 at ¶ 4). Hartman was also dubious about the Automation department, stating: "For many years, management has re-assigned older workers to Automation. Some have been able to handle the physically harder working requirements, but most have quit or retired because of their inability to manage the heavy demands of Automation." (Id. at ¶ 10).

Scott enjoyed her position in 030-Manual Distribution where she would sort letters by zip code and by state. (Scott Depo. Doc. # 63-1 at 31). According to Scott, she was "fast," "efficient and proficient" such that she could "case a thin tray of mail in a matter of 30 minutes or less." (Id. at 33). Scott described a typical day as follows: She would arrive at 11:00 PM, sort mail for four hours, take a meal break, and then sort mail until her shift ended at 6:30 AM. (Id. at 33-35). Scott specified that she was never required to use machinery and she was content with her duties. (Id. at 38-40).

A year later, Scott applied for a new "bid" with an

earlier shift, such that she worked from 7:00 PM until 2:30 AM. (<u>Id.</u> at 36). Around 1998, Scott was diagnosed with diabetes. (<u>Id.</u> at 88). A few years later, a Collective Bargaining Agreement between the Postal Service and the American Postal Workers Union resulted in Scott being converted from a distribution clerk to a mail processing clerk. (<u>Id.</u> at 36). The duties for both positions were essentially the same, and Scott's position did not change except for her title. (<u>Id.</u> at 36, 46).

### D. <u>Scott's Health Issues and Doctor's Notes</u>

After many years of employment, Scott's feet began to really bother her. In January of 2005, she was provided with a doctor's note from the VA stating "no standing" and indicating that Scott "needs to stay off her feet." (Doc. # 63-2 at 32). And, on September 19, 2005, she obtained a similar VA doctor's note attempting to excuse her from long periods of standing. (<u>Id.</u> at 26). After one incident in which her feet became so swollen that she could not walk, Scott received a July 25, 2006, note from her treating physician stating that Scott "must be able to sit for one hour for each hour she stands at work. This is permanent." (<u>Id.</u> at 18);(Scott Depo. Doc. # 63-1 at 47-49). Scott's medical documents also show that she requested restrictions on heavy

lifting beginning in 2006. (Doc. # 63-2 at 22-24).

Scott also provided a July 14, 2009, doctor's note to the Postal Service stating that Scott has "chronic pain in both feet due to flat feet deformity." (Doc. # 67-4 at 2). That note also says that Scott is "unable to stand or walk long periods" and indicates that she should be provided with an ergonomic chair for her pain. (Id.). The record shows that Scott was provided with a chair to accommodate her well-documented disability, but it was taken away by the Postal Service in August of 2014. (Scott Aff. Doc. # 67-2 at 3); (Doc. # 63-2 at 155).

And, in June of 2013, Scott's diabetes, which she had been able to manage, became "out of control," causing her to lose her vision and her ability to drive. (Scott Depo. Doc. # 63-1 at 86-87). She sought medical care from the Diabetes Endocrinology Institute and requested an accommodation (a schedule change) to help her manage her diabetes. (Id. at 88). She was taking pills, administering shots, and testing her blood sugar three to four times a day. (Id. at 89). Scott made specific requests for reasonable accommodations in memoranda dated June 21, 2013; June 24, 2013; and July 21, 2013.

Her June 21, 2013, memorandum states that Scott is requesting a reasonable accommodation under the ADA, the Rehabilitation Act, and EEOC Regulations. (Doc. # 63-2 at 102). She stated that her disability is diabetes and that she needed to avoid the night shift to manage her condition. (Id.). She attached "PS Form 3666" and other documents.

Thereafter, Scott sent another memorandum dated June 24, 2013, again requesting a reasonable accommodation:

> Subject: Notice of Request for Reasonable Accommodation of Work Hours.
> I, Terry Lee Scott was hired as a Disable[d] Veterans' with 10 point Veterans' Preference. I am requesting Reasonable Accommodation of work hours in order to control my diabetes/medical condition as Diabetic. The present hours interferes with the controlling of my medical condition, the hours suggested by my Endocrinologist is necessary to monitor and control my condition. The suggested hour is written by my Endocrinologist, Dr. O'Malley. See attached note.

(Id. at 93). The doctor's note Scott attached explains how the night shift interferes with Scott's ability to manage her diabetes and specifically notes that her shift should begin before 2:00 PM. (Id. at 94). Scott also attached a detailed paper about diabetic employees issued by the American Postal Worker's Union, AFL-CIO, dated January 28, 2013. (Id. at 95). That document describes the Postal Service's Agreement to provide reasonable accommodations to diabetic employees.

8

(Id.). The document indicates: "Many individuals with diabetes work with few or no accommodations. However, some workers need an adjustment in the workplace to better manage and control their condition. Most of the accommodations requested by employees with diabetes, such as regular work schedules, meal breaks, a place to test their blood sugar levels, or a rest area, do not cost employers anything." (Id.).

Scott's June 24, 2013, request for an accommodation was denied because Scott failed to use a standard form ("PF Form 2488") to submit her request. (Id. at 96). Shortly thereafter, on July 21, 2013, Scott again attempted to request a reasonable accommodation, this time using forms provided by the Postal Service. (Id. at 102-103). She was not accommodated, but she persisted in her attempt to receive an accommodation. She sent another request for a reasonable accommodation on July 24, 2013, supplying more forms and questioning whether the various forms that the Postal Service required complied with the Rehabilitation Act. (Id. at 117).

On September 25, 2013, she sent another "memorandum," this time reflecting her understanding that she would not be granted a change of shift at her current Postal Service

location. (<u>Id.</u> at 146). She indicated that Michael Kilcomons, the Occupational Health Nurse Administrator for the Postal Service, "informed me that there were no position[s] or accommodations available at Tampa P&DC and was encouraging me to accept a position in Orlando or Sarasota 45-75 miles away; if I wanted to maintain my employment with the Postal Service." (<u>Id.</u>). It appears that Scott was not accommodated by the Postal Service.

She also sent certified copies of doctor's notes from the VA to supervisors at the Postal Service, such as a July 2, 2014, note from Adam Trinque, DPM, Resident Podiatrist, stating that Scott should not stand for longer than 15 minutes or walk "greater than 25 feet without rest." (<u>Id.</u> at 154).

### E. EEO Complaints Abound

In 2009, Scott was required to apply for a new bid, and she successfully obtained a continued bid in her desired position of 030-Manual Distribution. (Scott Depo. Doc. # 63-1 at 53-55). However, in August of 2011, she became an "unassigned employee" and was subjected to reduced hours. (<u>Id.</u> at 55, 59). On October 14, 2011, Scott filed an "EEO Complaint of Discrimination in the Postal Service." (Doc. # 63-2 at 54). She indicated that the discrimination was based on her "age

(40+)" and stated that her hours were drastically reduced to only 30 hours a week, and that younger, non-career postal employees were recently hired and worked 40 or more hours weekly. (Id.).[3]

Then, in 2012, Scott was subjected to a different, more difficult work schedule with less desirable days off. (Scott Depo. Doc. # 63-1 at 63). Scott contends that in February of 2012, management tried to move her to Automation, a department that she dreaded and considered "not safe." (Id. at 64, 73). As a result, she filed another "EEO Complaint of Discrimination in the Postal Service" on February 26, 2012. (Doc. # 63-2 at 55). This time, she based her claimed discrimination on "Retaliation" and "Disability." (Id.). She explained:

> I was hired as a disabled veteran with ten point preference, under the Americans with Disability Act or Rehabilitation Act. My severe disability involves a non-paralytic condition that impairs both feet and legs. I obtained employment with a disability and qualified to perform the essential job functions as a manual distribution clerk. After sixteen years in the position, a unilateral action was taken. I was involuntarily placed into a light duty assignment, although the position of manual clerk was not eliminated. The unilateral action(s) have affected the terms and conditions of

---

[3] Scott is not bringing an age discrimination claim in this case.

11

> employment for me as a disabled veteran. I believe
> this action was taken as retaliation for my EEO
> activity.

(<u>Id.</u>). Scott also sent a memorandum to her Plant Manager, Mitchell Cade, and others, stating that she is disabled and that she is "a protective employee covered under the American with Disability Employee Act." (<u>Id.</u> at 59).

Cade responded by suggesting that Scott apply for "light duty." (Doc. # 63-2 at 62). But Scott understood that "light duty" was for a temporary problem, and Scott considered her disabilities to be permanent, such that a reasonable accommodation was in order. (Scott Depo. Doc. # 63-1 at 74). Thus, Scott did not apply for light duty. (<u>Id.</u> at 75-76).

On April 9, 2012, Kilcomons sent Scott a letter about obtaining a reasonable accommodation. (Doc. # 63-2 at 74). Kilcomons indicated that Scott should apply for the reasonable accommodation in ten days. (<u>Id.</u>). Scott still held an official bid in the Automation department, but she somehow managed to work in 030-Manual Distribution for all of her shifts. By this time in her career, Scott's diabetes had become a serious concern, and as noted above, she requested a day shift. (Scott Depo. Doc. # 63-1 at 89-95). That accommodation was denied. (<u>Id.</u> at 113).

Because Scott's chair was taken, she used a rest bar. However, she explained that leaning on the rest bar injured her feet. Thus, in October of 2013, Scott underwent foot surgery and returned to work with significant limitations, including requiring the use of a chair at all times. (Id. at 124, 131). Around this time, Scott submitted additional doctor's notes from the VA evidencing her disability and need for accommodations. (Id. at 123). On December 17, 2013, Scott filed yet another EEO Complaint of Discrimination in the Postal Service, based on disability and retaliation, stating:

> On or about October 10, 2013, I received an official denial of my request for reasonable accommodation for my disability of diabetes. Managerial officials was previously aware of my disability. Necessary medical documentation was provided consistent with EEO recognized and suggested accommodation for the disability of diabetes. I was retaliated against for my involvement with [prior EEO Complaints] and was assigned difficult work hours which has made it difficult to medically control my disability. I have also been denied full time employment.

(Doc. # 63-2 at 148).

## F.   **Scott Files Suit and is then "Walked Off the Job"**

In January of 2014, as a result of "operational changes," Scott was converted back to being a traditional full-time employee. (Doc. # 63-2 at 150).[4]   However, the news was

---

[4]   Scott testified that the January 2014 change was actually to correct prior mismanagement and misinterpretation

bittersweet. In connection with the "Notice of Conversion" to being a traditional full-time employee, Scott was required to re-bid for a position. (Id.). She did not win a bid in her much-desired post of 030-Manual Distribution. On February 4, 2014, Scott received a letter explaining that she was required to report to Automation for the 2200-0630 shift--the night shift. (Doc. # 63-13 at 1).

On July 2, 2014, while still employed by the Postal Service, Scott filed a pro se complaint against the Postal Service, initiating this case. (Doc. # 1). She claimed that the Postal Service violated the Rehabilitation Act, the Americans with Disabilities Act (the ADA), EEOC Regulations, the Civil Rights Act of 1964, various Collective Bargaining Agreements, and the National Labor Relations Act. (Id.). She also asserted that her work assignments were being changed every 90 days, and that she was involuntarily placed on "light duty" instead of being given a reasonable accommodation. All the while, she continued to supplemental her medical file at the Postal Service with information from the VA and other physicians regarding her limitations. For instance, her 171-page employee medical file contains an April 8, 2014, VA

of a relevant Collective Bargaining Agreement going all the way back to 2011. (Scott Depo. Doc. # 63-1 at 129-30).

doctor's note from Andrew Chia, DPM, Resident Podiatrist, stating that Scott "should not remain standing for more than 15 minutes per hour or walk distances greater than 25 yards without resting." (Doc. # 63-2 at 153).

Nevertheless, Scott still showed up on workdays and reported to 030-Manual Distribution. This continued until October 17, 2014, when acting supervisor Pete Andriotis approached Scott and told her that she needed to either perform her assigned bid in Automation, apply for light duty, or go home. (Scott Depo. Doc. # 63-1 at 144). After a few attempts to work unauthorized shifts in 030-Manual Distribution, Scott was "walked off the job" on October 18, 2014, and required to turn in her badge. (Id. at 149). In her eyes, the Postal Service gave "criminals" better treatment than she received. (Id. at 151). Even though she already had one lawsuit filed in federal court – the present case – she filed a second lawsuit against the Postal Service on October 31, 2014, claiming violations of the Rehabilitation Act and asserting other claims. (Case No. 8:14-cv-2746). That case was consolidated with the present case.

### G.    Scott's Amended Complaint

Thereafter, Scott hired counsel, and on March 2, 2015, Scott filed an Amended Complaint. (Doc. # 38). In her Amended

Complaint, she asserts the following claims against the Postal Service: (1) "Rehabilitation Act - feet, knees, and ankles" (count 1); -"Rehabilitation Act - diabetes" (count 2); "Breach of [Collective Bargaining Agreement]" (count 3); and "Rehabilitation Act - Retaliation" (count 4).

The Amended Complaint states that it is brought pursuant to the Rehabilitation Act 29 U.S.C. §§ 501, 791 and the Florida Civil Rights Act, Fla. Stat. § 760.01 (FCRA). However, after mentioning the FCRA on pages one and two of the Amended Complaint, there are no further references to the FCRA and there are no counts brought under the FCRA. The Rehabilitation Act is the exclusive remedy for federal government employees seeking damages and relief for work-place discrimination based on disability. Lapar v. Potter, 395 F. Supp. 2d 1152, 1160 (M.D. Fla. 2005).[5] Scott contends that the Postal Service violated the Rehabilitation Act by discriminating against her, failing to accommodate her disabilities, and retaliating against her after she participated in protected activity.

On March 16, 2015, the Postal Service filed a Motion to Dismiss, raising jurisdictional and standing issues. (Doc. #

_____

[5] Neither party has discussed the FCRA during the summary judgment phase, and the FCRA claims, if any, have been abandoned by Scott.

39). The Court granted the Motion to Dismiss in part by dismissing the breach of collective bargaining agreement claim asserted in count 3. (Doc. # 41). That count was dismissed because Scott did not file a grievance at the time of the alleged breach. (Id. at 5). The Court determined that it was appropriate to stay the remaining Rehabilitation Act claims pending resolution of Scott's appeal before the Merit System Protection Board. (Id. at 6).

On December 20, 2017, Scott advised the Court that the MSPB proceedings had concluded. (Doc. # 50). This Court accordingly re-opened the case on that date. (Doc. # 51). Although there were many proceedings before the MSPB, that entity ultimately determined that it lacked jurisdiction. (Doc. # 44-1). And, the Federal Circuit affirmed the finding of no jurisdiction. (Doc. ## 48, 50). Although the transcript before the MSBP was filed by the Postal Service, the Court has not given any weight to that entity's findings. On December 10, 2018, Plaintiff filed a Motion in Limine to preclude any mention of any finding or decision of the MSPB or that of subsequent appellate decisions. (Doc. # 74). In response, the Postal Service agreed that it "will not argue that the MSPB's findings of fact and conclusions of law are binding on this Court." (Doc. # 75). The Court accordingly found the issue to

be moot. (Doc. # 76).

At this juncture, the Postal Service seeks summary judgment on the Rehabilitation Act claims asserted in the Amended Complaint.

## II. __Legal Standard__

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. __Anderson v. Liberty Lobby, Inc.__, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable juror could return a verdict for the nonmoving party. __Mize v. Jefferson City Bd. of Educ.__, 93 F.3d 739, 742 (11th Cir. 1996) (citing __Hairston v. Gainesville Sun Publ'g Co.__, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. __Allen v. Tyson Foods, Inc.__, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at

trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only

proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034

(11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**III.  Analysis**

**A.    Failure to Follow the Court's Guidelines**

Before undertaking analysis of the legal and factual

issues presented, the Court takes this opportunity to point

out that the Postal Service, as the movant, has failed to

comply with the Court's procedures for streamlining summary

judgment proceedings. The Court's practices and procedures,

which are prominently displayed on the Court's website,

require:

> Each motion for summary judgment must include a
> section titled "Statement of Material Facts." The
> statement of material facts must list each material
> fact alleged not to be disputed in separate,
> numbered paragraphs.  Each fact must be supported
> by a pinpoint citation to the specific part of the
> record relied upon to support that fact.

The Court also requires an Exhibit Index.  Specifically,

"Counsel filing a document with exhibits totaling more than 10

pages must create an index to the exhibits, including the

exhibit number and title." The Court provides a sample Exhibit

Index on the website for counsel to utilize.

Instead, the Postal Service's Motion for Summary Judgment

before the Court lacks numbered paragraphs.  In addition,

while the "undisputed" facts are supported by citations, each

citation is in a footnote, 133 footnotes in total. And, because the Postal Service failed to provide the Court with an exhibit index, the Court is forced to wade through the 728-page record without a key. These procedural shortcomings have mightily increased the Court's burden. Nonetheless, the Court now addresses the Motion and denies it on the merits.

**B. <u>Disability Discrimination - Disparate Treatment</u>**

"The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities." <u>Tarmas v. Sec'y of the Navy</u>, 433 F. App'x 754, 759 (11th Cir. 2011). Disparate treatment claims brought under the Rehabilitation Act are analyzed under the same standards as set forth in Title VII of the Civil Rights Act of 1964 and the ADA. <u>Id.</u> at 761, n.7.

"Under the Rehabilitation Act, a plaintiff can prove disability discrimination through either direct evidence of discrimination, or through circumstantial evidence." <u>Curry v. Sec'y Dep't of Veterans Affairs</u>, 518 F. App'x 957, 963 (11th Cir. 2013). "If the plaintiff relies on circumstantial evidence, the <u>McDonnell-Douglas</u> burden-shifting framework applies." <u>Id.</u> Under this framework, "the plaintiff must establish a prima facie case for discrimination, the defendant must offer a legitimate, non-discriminatory justification for

21

the employment decision, and the plaintiff must ultimately prove that the defendant's justification is a pretext for discrimination." Id.

Here, Scott contends that she was discriminated against due to her disabilities. A prima face case exists if the employee (1) was disabled, (2) was a qualified individual, and (3) suffered unlawful discrimination because of her disability. Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255-56 (11th Cir. 2007). The defendant must show a legitimate and non-discriminatory reason for the conduct to refute the prima facie case. Furnco Const. Corp. v. Waters, 438 U.S. 567, 577-78 (1978), which the plaintiff can then overcome with a showing of pretext. Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

### 1. **Whether Scott is Disabled**

A person is disabled if "she has a physical or mental impairment that substantially limits one or more of her major life activities, she has a record of such an impairment, or she is regarded as having such an impairment." Holton v. First Coast Service Options, Inc., 703 F. App'x 917, 920 (11th Cir. 2017). It cannot reasonably be disputed that Scott is disabled.

Although the Postal Service devotes many pages of the Motion for Summary Judgment to this element, it ultimately concedes: "Scott can likely show that, at some time during her employment, she became disabled within the meaning of the ADA." (Doc. # 63 at 19). The Postal Service correctly stipulates that "Diabetes is an impairment that substantially limits a major life activity," and in "2013, Scott's diabetes interfered with her ability to work a night shift," and "Scott's foot condition [] limited her ability to stand for long periods or walk long distances." (Id.).

The record supports Scott's claim that she is disabled based on her uncontrolled diabetes and foot and leg issues. During her deposition, she described losing her vision due to diabetes and not being able to drive. (Scott Depo. Doc. # 63-1 at 86-87). She also described debilitating leg and foot pain and a foot deformity, which limits her ability to walk and stand. The record contains numerous notes from physicians documenting her limitations and describing her disabling conditions. See, e.g., (Doc. # 63-2 at 18, 26, 32). Thus, Scott satisfies her prima facie burden as to being disabled.

## 2. Whether Scott is a Qualified Individual

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires." 42 U.S.C. §§ 1211(8). The Eleventh Circuit has held that analysis of whether an individual is qualified for a job entails a two-step process. First, the individual must show "sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job." <u>Gary v. Ga. Dep't of Human Res.</u>, 206 F. App'x 849, 851-52 (11th Cir. 2006). Next, the individual must show that she can perform the essential functions of the job, with or without reasonable accommodations. <u>Id.</u>

There is a genuine issue of material fact regarding whether Scott was qualified to perform her job at the Postal Service. Scott persuasively points out that "she worked as scheduled every week in 030-Manual Distribution for 18 years, with or without reasonable accommodations." (Doc. # 67 at 2).

The Postal Service highlights that Scott's "bid in [A]utomation requires constant standing and repetitious bending and lifting." (Doc. # 63 at 20). Her "bid" also requires working a night shift. (<u>Id.</u>). The record supports that Scott is unable to meet some of the demands of the Automation department. She stated during her deposition that when she arrived in the Automation department, she was immediately sent back to 030-Manual Distribution due to her

disabilities. (Scott Depo. Doc. # 63-1 at 179).  However, Scott disputes whether it was appropriate to assign her to Automation in the first place and argues that her placement in Automation was an act of retaliation.  Scott's desired post was the post that she occupied for over a decade, and it does not appear disputed that she was more than qualified to perform her duties in 030-Manual Distribution.

### 3.    **Whether Scott Faced Disparate Treatment**

There is also a genuine issue of material fact regarding whether Scott faced disparate treatment.  Absent direct evidence of disability discrimination, Scott must show the Postal Service treated her less favorably than similarly situated, non-disabled employees. Wolfe v. Postmaster General, 488 F. App'x 465, 468 (11th Cir. 2012).  Both sides utilize the discussion of comparators to analyze the alleged disparate treatment.  To show disparate treatment through the use of a comparator, the comparator must be "similarly situated to the plaintiff in all relevant respects." Stone & Webster Constr., Inc. v. U.S. Dep't of Labor, 684 F.3d 1127, 1135 (11th Cir. 2012).

Rather than provide complete and cogent analysis of alleged comparators, both sides merely mention (or briefly

discuss) alleged comparators and leave the Court with many unanswered questions.

In the Motion for Summary Judgment, the Postal Service asserts that Scott has not identified appropriate comparators. The Postal Service points to Scott's response to an interrogatory calling upon her to identify each individual employee at the Postal Service Scott believes was treated differently than her because of her disability and "how the employee was treated differently." (Doc. # 63-2 at 52).

Scott's response to the interrogatory indicates:

> Jane Glassier, has tour in 030 from 1400 to 2230; still has her paying job.
> Soraya Piorno, Diabetic on day shift. Still has her paying job and not a 10 point veteran preference, gets to sit down all the time.
> Andrea Hickman. Works in MDO office after surgery so that she can earn more sick leave, when she is supposed to be working on flat sorting machine.
> Michele Espinosa. Spouse of another Supervisor. Ready to walk her out of 030, but LaTricia Mack, APWU objected, so she remained in 030. Light Duty Board still has not met.
> Reshenda Jerrigan. Spouse of another Supervisor. Diabetic in 030 on Tour 1. Had bid in Automation, but moved her out to Customer Service, Tour 2.
> Ronald Merriweather. Applied for Light Duty, bid on Automation, but still remained in 030 with ergonomic chair. Works more hours than me.
> Christine Hartman. Hurt on the job, OWCP, as ergonomic chair on 030. National Reassessment Program, NRP, awardee. Denied me NRP. It is my understanding that children of employees are in 030, while I am kept out.

(Id.).

In the Motion for Summary Judgment, the Postal Service comments on only five of Scott's seven proposed comparators. For example, the Postal Service correctly states that Soraya Piorno is not a valid comparator because she is a supervisor and Scott is not in a supervisory role. However, the Postal Service does not address two proposed comparators at all: Jane Glassier and Andrea Hickman. The Postal Service also mentions that Michele Espinosa and Christine Hartman are dissimilar to Scott because they were placed on light duty at some point, while Scott did not agree to light duty placement. But, the Court has not been supplied with any information by either party regarding the role that these employees played at the Postal Service or the manner in which the Postal Service allegedly treated them better than Scott.

Additionally, the Postal Service indicates that some of Scott's identified comparators are also diabetic, and thus, are also disabled. This analysis is not persuasive in the Court's view because the fact that a person has been diagnosed with diabetes does not mean that they are automatically disabled. See Cash v. Smith, 231 F.3d 1301 (11th Cir 2000)(finding a diabetic employee was not disabled within the meaning of the ADA and the Rehabilitation Act); Thomas v. Imerys Carbonates, LLC, No. 1:17-cv-1258, 2018 WL 6446651, at

*5 (N.D. Ala. Dec. 10, 2018)("[D]iabetes . . is not a per se disability under the ADA"). Here, Scott described her diabetes as "out of control," as interfering with her ability to work certain shifts, and as causing her to have blurry vision, and generally wreaking havoc on her ability to function. (Scott Depo. Doc. # 63-1 at 86-87)("my diabetes was out of control. My numbers were not good, my A1C was off the wall. I just couldn't see. I could no longer see. Everything was blurry . . . my sugar's high."). The Court has not been provided with helpful information about the other comparable individuals that may, or may not, have been treated better by the Postal Service. Accordingly, summary judgment is not appropriate as to the disparate treatment claim.

## C.   **Failure to Provide a Reasonable Accommodation**

Scott also claims that the Postal Service violated the Rehabilitation Act by failing to provide a reasonable accommodation.[6] To establish her prima facie case, Scott must show that: (1) she was disabled; (2) she was a qualified individual; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation.

---

[6] The Court is well aware that a failure to accommodate disability discrimination action is a stand alone action that does not require a showing of disparate treatment. Holly, 492 F.3d at 1262.

<u>Skotnicki v. Bd. of Trs. of the Univ. of Ala.</u>, 631 F. App'x 896, 903 (11th Cir. 2015). The plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, and it is the plaintiff who also bears the ultimate burden of persuasion to demonstrate that the accommodation is reasonable. <u>Dalton v. CDC</u>, 602 F. App'x 749, 755 (11th Cir. 2015).

"The Rehabilitation Act may require an employer to transfer a disabled person to a vacant position as a reasonable accommodation; [h]owever, employers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as its exists." <u>Id.</u>

The Court denies the Motion for Summary Judgment for this claim. Scott contends that if she were permitted to perform her existing job in 030-Manual Distribution, no accommodation would have been needed at all. The Postal Service suggests that during her employment, Scott failed to provide correct documentation for her disability and requests for accommodation. This is disputed, and Scott argues in response that she "provided all medical records requested." (Doc. # 67 at 14). Scott's lengthy medical file, which the Postal Service submitted to the Court in support of the Motion for

Summary Judgment, supports Scott's contention that she
dutifully provided information from her physicians with the
goal of being reasonably accommodated.

Instead of Scott failing to supply the Postal Service
with information, a reasonable juror could conclude that
Scott's medical information was not correctly taken into
account by the Postal Service. Notably, the record shows that
the Postal Service repeatedly insisted that Scott request
light duty against Scott's wishes. A majority of the record
reflects the Postal Service's incessant demand upon Scott that
she seek light duty classification. On the last day of her
employment, she was instructed to go to the Automation
department, apply for light duty work, or go home.

Yet, the Postal Service's reply in support of the Motion
for Summary Judgment concedes:

> The defendant agrees that light duty is generally a
> temporary accommodation, and that the DRAC reviews
> permanent accommodations. The defendant further
> agrees (1) that, based on her July 2, 2014, medical
> note, the plaintiff could not perform the essential
> functions of her job in automation with or without
> an accommodation; (2) that 030 is one area to which
> the defendant assigns an employee with a physical
> restriction; and (3) that a request for a permanent
> accommodation should go to the DRAC and not the
> light duty board.

(Doc. # 69 at 4).

A reasonable juror could find that the Postal Service should have accommodated Scott by allowing her to remain in 030-Manual Distribution, a department that she successfully worked in for over a decade. The Motion for Summary Judgment is accordingly denied with respect to Scott's claim that the Postal Service failed to accommodate her under the Rehabilitation Act.

D.  **Retaliation**

"The Rehabilitation Act prohibits retaliation against an employee who has opposed disability discrimination." <u>Simpson v. Ala. Dep't Human Res.</u>, 501 F. App'x 951, 954 (11th Cir. 2012). In order to establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show "(1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal relationship between the two events." <u>Id.</u> Similar to Scott's disability discrimination claims, in the absence of direct evidence of retaliation and discrimination, the Court utilizes the <u>McDonnell-Douglas</u> burden-shifting paradigm. <u>Id.</u>

The Postal Service does not dispute that Scott engaged in protected activity. (Doc. # 63 at 29). The Court finds that Scott's EEO complaints on October 14, 2011, February 26, 2012, and December 17, 2013, constitute protected activity. In

addition, the filing of her two federal lawsuits against the Postal Service are also protected activity. The record also supports that Scott requested an accommodation multiple times in light of her disabilities, which is also statutorily protected activity. <u>See</u> <u>Frazier-White v. Gee</u>, No. 15-12119, 2016 U.S. App. LEXIS 6318, at *19 (11th Cir. Apr. 7, 2016).

As to the second element, the Postal Service does not dispute that Scott faced an adverse employment action. The Postal Service concedes "Scott can likely establish that the loss of her bid in 2011 was an adverse employment action." (Doc. # 63 at 29). The Court agrees that the loss of her bid was an adverse employment action, but that was not the only one. Scott also had her chair taken away from her, and she was sent to the less desirable Automation department. Finally, Scott was "walked off the job" and required to turn in her access badge.

The final element of Scott's prima facie case is causation. To establish the causal connection element, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." <u>Clover v. Total Sys. Servs., Inc.</u>, 176 F.3d 1346, 1354 (11th Cir. 1999). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was

aware of the protected conduct at the time of the adverse employment action." <u>Brungart v. Bellsouth Telecomm.</u>, 231 F.3d 791, 799 (11th Cir. 2000). Because Scott participated in numerous forms of protected activity during her long career, and because the Postal Service took several adverse actions against Scott, there are many avenues for showing causation.

One way that Scott can meet her prima facie burden is by showing the short duration between her protected activity and an adverse action. Here, she submitted an EEO Complaint on December 17, 2013, formally complaining of discrimination and retaliation. Then, on February 4, 2014, (one month and 18 days later) Scott received a letter explaining that she was required to report to Automation for the 2200-0630 shift, which was the night shift. (Doc. # 63-13 at 1). This is an adverse action because Scott unquestionably could not perform the functions demanded by Automation due to the combination of her disabilities, and the night shift schedule interfered with her ability to manage her diabetes. Accordingly, Scott has presented a prima facie case of retaliation.

The Postal Service bears the burden of showing that it had a legitimate and non-retaliatory reason for its employment decisions. Here, the Postal Service claims that it acted neutrally and treated all employees the same. For instance,

arguing that Scott's bidding decisions were based on the result of various Collective Bargaining Agreements. It also contends that all 030-Manual Distribution employees were required to have medical documentation for using a chair, and Scott's documentation was lacking.

The burden thus shifts back to Scott to show pretext. In order to show pretext, Scott "must demonstrate that the proffered reason was not the true reason for the employment decision." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). "In evaluating a summary judgment motion, the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id.

Of course the Postal Service posits that any adverse employment actions that befell Scott resulted from either a Collective Bargaining Agreement or from other factors outside the Postal Service's control. Kilcomons comments that the job Scott wanted - a sedentary job with favorable hours - is "highly desirable and increasingly rare in both mail processing plant and customer service operations." (Kilcomons

34

Decl. Doc. # 63-25 at 3-4). He also states: "highly desirable jobs like the one Ms. Scott needs are unavailable for accommodations." (Id. at 4). The Postal Service argues that its decisions--such as reducing Scott's hours, changing her bid, taking away her chair, and then requiring her to surrender her access--badge were unrelated to Scott's protected activity.

However, a reasonable juror could find that the Postal Service retaliated against Scott because she participated in protected activity. For example, it seems highly implausible that 030-Manual Distribution, the department where the Postal Service sends temporarily and permanently injured workers, would be comprised of positions that are "unavailable for accommodations." Rather, a reasonable juror could agree with Scott that the Postal Service's argument that Scott "could not be accommodated in 030 due to lack of funding is outrageously [] false and pretextual." (Doc. # 67 at 24). The juror could credit Hartman's declaration statement that "Scott's position in 030 was always available to her after October 2014, but management filled her slot with the [Postal Service Employee] workers." (Hartman Decl. Doc. # 67-5 at 3). The fact that Scott occupied her position for such a long duration supports the theory that her position in 030-Manual Distribution was

available all along and, rather than having to send her to Automation or (inappropriately) require her to apply for light duty, the Postal Service ejected her from her post as an act of retaliation for one (or all) of her many instances of engaging in protected activity.

And, with respect to taking away her chair, a reasonable juror could find it was contradictory to remove her chair based on a lack of medical documentation when Scott did, in fact, supply the Postal Service with a note calling for the use of a chair. (Doc. # 67-4 at 2). However, not long after she filed suit in this case, the Postal Service took her chair away. Thus, the juror could find that a desire to retaliate against Scott motivated its decisions.

In addition, a reasonable juror could find that Scott was discharged from her employment based on her protected actions, such as requesting reasonable accommodations and filing EEO Complaints. The Court finds that Scott should be permitted to present her arguments and evidence to the jury, and the jury will determine whether the adverse employment actions Scott faced were retaliatory.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

36

Defendant Patrick R. Donahoe, Postmaster General, United States Postal Service's Motion for Summary Judgment (Doc. # 63) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of February, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE