## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TERRY LEE SCOTT,

      Plaintiff,

v.                        Case No: 8:14-cv-1620-T-33TGW

PATRICK R. DONAHOE,
Postmaster General, United States
Postal Service,

      Defendant.

_____/

### COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

1

## JURY INSTRUCTION NO. 1

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in anyway. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

## JURY INSTRUCTION NO. 2

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

3

## JURY INSTRUCTION NO. 3

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

## JURY INSTRUCTION NO. 4

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## JURY INSTRUCTION NO. 5

In this case it is the responsibility of the plaintiff, Terry Lee Scott, to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Ms. Scott's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Ms. Scott's claims by a preponderance of the evidence, you should find for the defendant, the Postal Service, as to that claim.

<u>JURY INSTRUCTION NO. 6</u>

In this case, Ms. Scott claims that the Postal Service discriminated against Ms. Scott because of her disabilities by failing to provide a reasonable accommodation for her disabilities within the meaning of the Rehabilitation Act.

The Postal Service denies Ms. Scott's claim and asserts that Ms. Scott was not a qualified individual, that Ms. Scott unreasonably delayed requesting an accommodation, and that no reasonable accommodation existed that would allow Ms. Scott to perform the essential functions of her job.

Under the Rehabilitation Act, if an employer knows that an employee has a disability and needs a reasonable accommodation to perform the essential functions of her job, the employer must provide a reasonable accommodation.

To succeed on her claim, Ms. Scott must prove each of the following facts by a preponderance of the evidence:

<u>First</u>:    Ms. Scott had a disability;

<u>Second</u>:  Ms. Scott was a qualified individual;

<u>Third</u>:    The Postal Service knew of Ms. Scott's disabilities;

<u>Fourth</u>:  Ms. Scott requested an accommodation;

<u>Fifth</u>:    A reasonable accommodation existed that would have allowed Ms. Scott to perform the essential functions of the job; and

7

<u>Sixth</u>:   The Postal Service failed to provide a reasonable accommodation.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

Definition of "Disability"

The parties agree that Ms. Scott was "disabled" within the meaning of the Rehabilitation Act because of her diabetes and a non-paralytic condition affecting Ms. Scott's feet and legs.

Definition of "Qualified Individual"

The second element requires that Ms. Scott prove by a preponderance of the evidence that she was "qualified" for the job when the Postal Service denied her reasonable accommodation requests. This means that Ms. Scott must show that she had the skill, experience, education, and other job-related requirements for a mail processing clerk, and could do the essential functions of the job – with or without reasonable accommodation.

In this case, the essential functions of a position are the fundamental duties of that position. The term "essential functions" does not include the position's marginal functions. To decide whether a function is essential to a particular position, you may consider the following factors:

(a) whether the function's performance is the reason the position exists;

8

(b) whether there are a limited number of employees available to perform the function;

(c) whether the function is highly specialized so that an employee in the position is hired for the ability to perform the function;

(d) the Postal Service's judgment about which functions are essential to the position;

(e) written job descriptions for the position;

(f) the amount of time an employee in the position spends performing the function;

(g) the consequences of not requiring an employee in the position to perform the function;

(h) the terms of a collective-bargaining agreement; or

(i) whether others who held the position were required to perform the function.

No single factor controls your decision. You should consider all the evidence to decide whether a function is essential to the job. To decide whether Ms. Scott was qualified to perform the essential job functions, you should consider her abilities as they existed when the Postal Service denied her reasonable accommodation requests.

For the third element, Ms. Scott must prove by a preponderance of the evidence that the Postal Service knew about her disabilities.

For the fourth element, Ms. Scott must prove by a preponderance of the evidence that she requested an accommodation.

Put another way, the third and fourth elements require Ms. Scott to prove that she informed the Postal Service of both the substantial limitations her disabilities created and the need for an accommodation.

For the fifth element, Ms. Scott must prove by a preponderance of the evidence that a reasonable accommodation existed that would have allowed her to perform the essential functions of the job.

For the sixth element, Ms. Scott must prove by a preponderance of the evidence that the Postal Service failed to provide a reasonable accommodation.

In this case, Ms. Scott claims that she would have been able to perform the essential functions of the job as a mail processing clerk with a reasonable accommodation. The Postal Service claims that Ms. Scott was unable to perform the essential functions of the job even with a reasonable accommodation.

A "reasonable accommodation" is a modification or adjustment of the employer's ordinary work rules, facilities, or terms and conditions of employment that the employer can make without causing an undue hardship.

A reasonable accommodation may include:

(a) making existing facilities readily accessible to, and usable for, Ms. Scott;

(b) job restructuring;

(c) part-time or modified work schedules;

10

(d) reassignment to a vacant position;

(e) acquiring or modifying equipment or devices;

(f) adjusting or modifying examinations, training materials, or policies;

(g) providing qualified readers or interpreters; or

(h) other similar accommodations for individuals with disabilities.

In this case, Ms. Scott claims that the Postal Service should have accommodated Ms. Scott by reassigning her to another position. Reassignment may be a reasonable accommodation under certain circumstances – but an employer is not required to create or reestablish a job where one would not otherwise exist. Also, an employer is not required to promote an employee with a disability as an accommodation. In addition, an accommodation that violates the seniority rights of other employees under a collective bargaining agreement is unreasonable under the law. To show that reassignment to another job would have been a reasonable accommodation, Ms. Scott must prove that the job was vacant or available, that it did not violate the collective bargaining agreement between the Postal Service and the postal union, and that she was qualified for it.

Ms. Scott also claims that the Postal Service should have accommodated her by modifying her work schedule. Modification of a work schedule can be a reasonable accommodation. But, Ms. Scott must show that the modified work

schedule would have enabled her to perform the essential job functions. And, Ms. Scott must show that the modification would have been reasonable under the circumstances, including that the modification would not have violated the collective bargaining agreement. An employer's duty to provide a reasonable accommodation to a disabled employee does not require the employer to burden other employees excessively.

In this case, Ms. Scott claims that the Postal Service should have granted her reasonable accommodation requests.

To decide whether the Postal Service denied Ms. Scott a reasonable accommodation, you should keep in mind that while an employer is required to provide a reasonable accommodation that would allow Ms. Scott to perform the essential job functions, the employer is not required to provide the particular accommodation that Ms. Scott prefers or requests. There may be more than one reasonable accommodation available under the circumstances, and if Ms. Scott refused to accept an accommodation offered by the Postal Service that would have allowed her to perform the essential job functions, Ms. Scott has not proven that the Postal Service failed to provide a reasonable accommodation.

Also, just because the Postal Service may have offered a certain accommodation to Ms. Scott or another employee in the past does not mean that the Postal Service must forever extend the same accommodation to Ms.

12

Scott or that the accommodation is necessarily reasonable under the Rehabilitation Act. Otherwise, an employer would be reluctant to offer benefits or concessions to disabled employees for fear that by providing the benefit or concession one time, the employer would be required to provide that accommodation in the future. Because Ms. Scott has requested an accommodation that the Postal Service has provided to Ms. Scott or to another employee in the past does not necessarily mean that the particular accommodation is a reasonable one. Instead, you must determine its reasonableness under all the evidence.

Good Faith Defense: If you find that Ms. Scott has proved each element she must prove, you must decide whether the Postal Service has established its affirmative defense.

The Postal Service claims that after Ms. Scott informed the Postal Service of her disabilities and requested an accommodation, the Postal Service made good faith efforts to consult with Ms. Scott in order to identify and make a reasonable accommodation.

The Postal Service must prove by a preponderance of the evidence that it made good faith efforts to identify and make a reasonable accommodation for Ms. Scott.

If you find by a preponderance of the evidence that the Postal Service made good faith efforts to identify and make a reasonable accommodation for Ms. Scott, then you have found that the Postal Service established its affirmative defense, and you will not decide the issue of Ms. Scott's damages. But if you find that the Postal Service has not established its affirmative defense, you must decide the damages issue.

If you find that Ms. Scott has proved each of the elements she must prove, you must decide the issue of her compensatory damages, on which I will instruct you in a moment.

## JURY INSTRUCTION NO. 7

In this case, Ms. Scott claims that the Postal Service retaliated against her because she took steps to enforce her lawful rights under the Rehabilitation Act.

Laws that prohibit discrimination in the workplace also prohibit an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws.

Ms. Scott claims that the Postal Service took various adverse employment actions: 1) refused to keep her in 030 Manual; 2) refused to give an earlier shift to manage her diabetes; 3) refused to permit Ms. Scott to use a chair 4) demanded that Ms. Scott either go to Automation, or apply for Light Duty, or go home. Ms. Scott claims that the Postal Service took those actions against her because of her engaging in protected activity, including: 1) the filing of three Equal Employment Opportunity complaints against the Postal Service in 2011, 2012 and 2013; 2) filing this Federal lawsuit in 2014; and 3) requesting reasonable accommodations. The Postal Service denies that it retaliated against Ms. Scott and asserts the employment decisions were made based upon legitimate, non-retaliatory reasons. Specifically, the Postal Service refused to keep Ms. Scott in 030 Manual and said she needed to go to Automation, or apply for Light Duty, or go home, because she was working outside her bid, and a postal employee could only work outside her bid with Light Duty or a

reasonable accommodation. The Postal Service refused to permit Ms. Scott to use a chair because she did not have current medical documentation to support using a chair and she did not request Light Duty to work in 030 Manual. Finally, the Postal Service refused to give Ms. Scott an earlier shift to manage her diabetes because there was no vacant, funded position and creating and giving her such a position would require violating the collective bargaining agreement.

To succeed on her claim, Ms. Scott must prove each of the following facts by a preponderance of the evidence:

First:  Ms. Scott engaged in a protected activity;

Second:  The Postal Service then took adverse employment actions;

Third:   The Postal Service took the adverse employment actions because of Ms. Scott's protected activity; and

Fourth:  Ms. Scott suffered damages because of the adverse employment action.

For the first element, Ms. Scott claims that she engaged in protected activity when she 1) filed three Equal Employment Opportunity complaints against the Postal Service in 2011, 2012 and 2013; 2) filed this Federal lawsuit in 2014; and 3) requested reasonable accommodations. The Postal Service agrees that Ms. Scott engaged in protected activity in this case.

16

For the second element, Ms. Scott claims that the Postal Service took adverse employment actions against her, when the Postal Service: 1) refused to keep her in 030 Manual; 2) refused to give an earlier shift to manage her diabetes; 3) refused to permit Ms. Scott to use a chair 4) demanded that Scott either go to Automation, or apply for Light Duty, or go home.  You must decide whether such actions by the Postal Service were adverse employment actions.

An "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination. Put another way, if a reasonable employee would be less likely to complain about or oppose alleged discrimination because she knew that the Postal Service would take those actions, then those actions are adverse employment actions. If the employment action would not make it less likely for a reasonable employee to make complaints about or oppose the alleged discrimination, it is not an adverse employment action.

For the third element, if you find that Ms. Scott engaged in protected activity and that the Postal Service took adverse employment actions against her, you must decide whether the Postal Service took those actions because of Ms. Scott's protected activity. Put another way, you must decide whether Ms. Scott's protected activity was the main reason for the Postal Service's decisions.

To determine that the Postal Service took adverse employment actions because of Ms. Scott's protected activity, you must decide that the Postal Service would not have taken the actions had Ms. Scott not engaged in the protected activity but everything else had been the same.

The Postal Service claims it did not take any adverse employment actions because of Ms. Scott's engaging in protected activity, and that the employment decisions were made for other reasons. An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may take an adverse employment action for any other reason, good or bad, fair or unfair.  If you believe the Postal Service's reasons for its action, and you find that the Postal Service did not take the actions because of Ms. Scott's protected activity, you must not second guess that decision, and you must not substitute your own judgment for the Postal Service's judgment — even if you do not agree with it.

As I have explained, Ms. Scott has the burden to prove that the Postal Service's decision to 1) refuse to keep her in 030 Manual; 2) refuse to give an earlier shift to manage her diabetes; 3) refuse to permit Ms. Scott to use a chair 4) demand that Ms. Scott either go to Automation, or apply for Light Duty, or go home, was because of Ms. Scott's protected activity. I have explained to you that evidence can be direct or circumstantial. To decide whether the Postal

Service's adverse employment actions were because of Ms. Scott's protected activity, you may consider the circumstances of the Postal Service's decisions. For example, you may consider whether you believe the reasons that the Postal Service gave for the decisions. If you do not believe the reasons that it gave for the decisions, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true retaliatory reasons for the decisions.

For the fourth element, you must decide whether the Postal Service's acts were the proximate cause of damages that Ms. Scott sustained. Put another way, you must decide, if the Postal Service had not taken the adverse employment actions again Ms. Scott, would these damages have occurred?

If you find that the adverse employment actions were the proximate cause of damages that Ms. Scott sustained, you must determine the amount of damages, which I will instruct you on in a moment.

## JURY INSTRUCTION NO. 8

When considering the issue of Ms. Scott's compensatory damages, you should determine what amount, if any, has been proven by Ms. Scott by a preponderance of the evidence as full, just and reasonable compensation for all of Ms. Scott's damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the Postal Service. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Ms. Scott has proved them by a preponderance of the evidence, and no others:

(a) net lost wages and benefits from the date of Ms. Scott's discharge to the date of her disability retirement on July 16, 2018; and

(b) emotional pain and mental anguish.

To determine the amount of Ms. Scott's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and how much Ms. Scott should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Ms. Scott does not have to introduce evidence of a monetary value for intangible things like mental

anguish. You must determine what amount will fairly compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Ms. Scott to be reasonably diligent in seeking substantially equivalent employment to the position she held with the Postal Service. To prove that Ms. Scott failed to mitigate damages, the Postal Service must prove by a preponderance of the evidence that: (1) work comparable to the position Ms. Scott held with the Postal Service was available, and (2) Ms. Scott did not make reasonably diligent efforts to obtain it. If, however, the Postal Service shows that Ms. Scott did not make reasonable efforts to obtain any work, then the Postal Service does not have to prove that comparable work was available.

If you find that the Postal Service proved by a preponderance of the evidence that Ms. Scott failed to mitigate damages, then you should reduce the amount of Ms. Scott's damages by the amount that could have been reasonably realized if Ms. Scott had taken advantage of an opportunity for substantially equivalent employment.

## JURY INSTRUCTION NO. 9

Of course, the fact that I have given you instructions concerning the issue of Ms. Scott's damages should not be interpreted in any way as an indication that I believe that Ms. Scott should, or should not, prevail in her case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## JURY INSTRUCTION NO. 10

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.